UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ERNESTO DIAZ, individually and on behalf of all others similarly situated, | Case No.: |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| | **DEMAND FOR JURY TRIAL** |
| -against- | |
| EQUIFAX INC. | |
| Defendant. | |

DIEFENBACH, PLLC
55 Broad Street, 27th Floor | New York, NY 10004
(212) 981-2233

Plaintiff Ernesto Diaz alleges upon personal knowledge of the facts pertaining to him and on information and belief derived from, among other things, investigations of counsel and review of public documents as to all other matters, as follows:

## SUMMARY OF THE ACTION

1.     Plaintiff brings this class action against the defendant Equifax Inc. ("Equifax") for its failure to secure and safeguard the private, personal, and immutable information of approximately 149 million consumers in the United States.[1]  The information obtained in the data breach included the social security numbers, birth dates, home addresses, driver's license numbers, credit card numbers, and credit dispute documents (collectively known as "personal identifying information" or "PII").

---

[1] *Cybersecurity Incident & Important Consumer Information*, EQUIFAX.
https://www.equifaxsecurity2017.com/2017/10/02/equifax-announces-cybersecurity-firm-concluded-forensic-investigation-cybersecurity-incident/

3.    On September 7, 2017, Equifax publicly announced that cyber hackers had breached a Web-based application used by Equifax during the period between mid-May through July of 2017 ("Data Breach"). As a result, for a period of approximately ten (10) weeks from May 2017 till July 29, 2017 when Equifax discovered Data Breach, criminal cyber attackers operated undetected within Equifax's data systems by exploiting the vulnerabilities of the web-based application to gain access to certain files.

4.    Equifax identified the vulnerability as a flaw in the open-source Apache Struts framework it used to build its web applications.

5.    The flaw in the open-source Apache Struts framework however was fixed in March 2017 with patches available to all users of the open-source Apache Struts. Despite the available patches, Equifax did not implement them to eliminate the vulnerability.

6.    As a result of Equifax's security failures, Plaintiff's and Class members' PII was accessed and stolen by cyber hackers during the Data Breach.

7.    Equifax's security failures put the Plaintiff and Class members at a serious, immediate, and ongoing risk of identity theft. This will cause Plaintiff and the members of the class to incur costs and expenses attributable to responding, identifying, and correcting damages that were reasonably foreseeable as a result of Equifax's willful and negligent conduct.

8.    Additionally, due to Equifax's failure to disclose the Data Breach until September 7, 2017, the Plaintiff and Class members were unable to take any action to mitigate the damages caused by the Data Breach for several weeks after the Data Breach occurred.

9.    The Data Breach was caused and enabled by Equifax's knowing violation of its obligations to secure consumer information despite the devastating and foreseeable effect the

DIEFENBACH, PLLC
55 Broad Street, 27ᵗʰ Floor | New York, NY 10004
(212) 981-2233

1 release of the private information would produce.

2 ## PARTIES

3     10.    Plaintiff Ernesto Diaz ("Plaintiff") brings lawsuit against Equifax individually and
4 on behalf of all others similarly situated.

5     11.    Plaintiff is a citizen of the State of New York who resides in New Rochell, New
6 York. After learning of the Data Breach, Plaintiff confirmed with Equifax's "Check Potential
7 Impact" webpage to confirm that his private information was compromised as part of the Data
8 Breach. Accordingly, Plaintiff is informed and believes his information has been compromised.

9     12.    On information and belief, defendant Equifax is a nationwide consumer reporting
10 agency and purveyor of credit monitoring and identity theft protection services for over 820
11 million consumers and more than 91 million businesses worldwide with over $3 billion in annual
12 revenue in 2016.[2] Equifax is a corporation organized and existing pursuant to the laws of the
13 state of Georgia with its principal place of business at 1550 Peachtree Street, N.W., Atlanta,
14 Georgia. In 2013, Equifax purchased its wholly-owned subsidiary Trusted ID. Inc.

15 ## JURISDICTION AND VENUE

16     13.    This Court has jurisdiction over Plaintiff's claims pursuant to the Class Action
17 Fairness Act, 28 U.S.C. § 1332(d). The amount in controversy, exclusive of interest, costs, and
18 attorney's fees, is greater than $5,000,000. At least one member of the class is a citizen of a state
19 that is diverse from that of defendant Equifax's citizenship, including but not limited to the

---

[2]*Company Profile,* EQUIFAX. http://www.equifax.com/about-equifax/company-profile

DIEFENBACH, PLLC
55 Broad Street, 27th Floor | New York, NY 10004
(212) 981-2233

1 Plaintiff, and there are more than 100 putative class members.

2   14.   This Court has jurisdiction over Defendant because it is registered to do business
3 in New York, it has sufficient minimum contacts in New York, or otherwise intentionally avails
4 itself of the markets within New York, through the promotion, sale, marketing, and distribution
5 of their products in New York, to render the exercise of jurisdiction by this Court proper and
6 necessary.

7   15.   Venue is proper in this District under 28 U.S.C. § 1391 because Equifax conducts
8 substantial business in this District, a substantial portion of the alleged wrong doing occurred in
9 this District, and the Plaintiff resides within the District.

10   16.   The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §
11 1331 because Plaintiff's claims arise under the Fair Credit Reporting Act ("FCRA") and the
12 Credit Repair Organization Act ("CROA").

13                    **FACTUAL ALLEGATIONS**

14   17.   Equifax has collected and stored the PII of Plaintiff as well as of the members of
15 the Class and Sub-Class.

16   18.   Equifax is considered a credit bureau that compiles information about consumers'
17 financial histories and provides such information to creditors, landlords, and employers, among
18 others. Additionally, it is a large-scale collector of consumer date for commercial exploitation.
19 Specifically, Equifax uses the PII it obtains to power a diverse variety of data-driven products
20 and service.

21   19.   Equifax is one of the three major consumer reporting agencies in the United States.
22 It provides creditors, landlords, and employers, among others, the financial histories of their

DIEFENBACH, PLLC
55 Broad Street, 27th Floor | New York, NY 10004
(212) 981-2233

1 consumer clients. As a result, Equifax houses highly sensitive financial and personal consumer

2 data. Its website makes a point to assert that Equifax is the home of comprehensive personal

3 credit, employment, and business data, as well as it is an exclusive source of the most

4 comprehensive workforce data available.[3] Equifax has ties with numerous government agencies

5 such as Medicare & Medicaid Services and the Social Security Administration.

6    20.    Equifax offers the services of helping their consumer clients not only understand

7 and manage their personal and credit information, but also protect that information through credit

8 monitoring services.

9    21.    By use of the aggregation of sensitive financial and personal consumer data it

10 has collected, Equifax has seen a substantial growth. Between the years of 2015 and 2016, the

11 consumer reporting agency saw an 18% growth in their operating revenue to an amount of $3.14

12 billion. The firm's Chief Executive Officer during the Data Breach, Richard Smith, received a

13 total compensation of over $14 million from Equifax in 2016. As a result of the aftermath of the

14 Data Breach, Richard Smith stepped down as Chief Executive Officer.

15    22.    Equifax provides its consumer customers with a false sense of security, even

16 publically proclaiming in its annual reports it has "state-of-the-art technology and the latest

17 security in place." These claims were accompanied by Equifax addressing, in the reports, the

18 growing issue of cybersecurity in the consumer reporting agency industry and acknowledging

19 that there is nothing more important than data security. Equifax claims security is "fundamental

DIEFENBACH, PLLC
55 Broad Street, 27th Floor | New York, NY 10004
(212) 981-2233

---

[3] *Financial Services*, EQUIFAX. http://www.equifax.com/business/financial-services

to every decision" it makes.[4]

23.    Equifax has stated its commitment to protecting its consumer clients through the highest of standards of security and privacy on multiple government agency and health care provider web pages. Due to the firm's essential position in the United State's functioning banking system, American consumers are dependent on Equifax and have given their trust and confidence to the firm.

24.    The trust and confidence consumers have placed in Equifax and its security protocols have given the firm the ability to assemble a massive and valuable data mine of sensitive information. Equifax represented itself in the highest possible regard to people and entities as a safe haven to place their sensitive information because of its claim to have the ability, equipment, and motivation to keep their PII secure.

25.    As a result of being entrusted with the sensitive personal and credit information of so many consumers in the United States, Equifax undertook the duty to keep that information secure within its data systems. In Mid-May of 2017, Equifax failed in this duty.

26.    Despite its own emphasis on data security in the credit service industry, Equifax not only failed to implement adequate security protocols and technological safe guards designed to prevent this type of cyber attack, but also failed to detect the unauthorized network activity of third parties in a timely and reasonable manner.

27.    Cyber attackers are an increasingly sophisticated adversary within the credit services industry. Equifax knows that in order to operate securely in the credit service industry,

---

[4]2005 Annual Report, EQUIFAX.
https://www.equifax.com/corp/investorcenter/annualReport2005/assets/pdfs/EFX_AR05_nar.pdf

CLASS ACTION COMPLAINT

DIEFENBACH, PLLC
55 Broad Street, 27ᵗʰ Floor | New York, NY 10004
(212) 981-2233

1  it must continually update the sophistication of its security protocols and technology.  In the years

2  leading up to the Data Breach, Equifax has sustained multiple exploited flaws within its security

3  systems.  In 2016, a security researcher found a common vulnerability in the main Equifax

4  website which had the possibility of revealing the username and password information of its

5  consumer clients if the vulnerability was exploited.[5]  More recently, an Equifax data leak

6  occurred in February 2017 where the credit information of a small number of customers had been

7  exposed to a third party.[6]  Even globally Equifax has failed in its duty; on an Equifax customer

8  portal in Argentina, another incident occurred in which the username and password was

9  admin/admin.  The Data Breach was not the first time Equifax's data systems and security

10 protocols have been compromised, Equifax has a history of inadequate security measures.

11     28.     Due to its history of insufficient security protocols and technology, Equifax knew

12 or should have known its safeguarding of its data systems was inadequate.  Therefore, Equifax

13 knowingly endangered the highly sensitive personal and credit information of millions of

14 consumers in the United States, exposing the PII of nearly half of the adult American population

15 to unauthorized third parties.

16     29.     On October 2, 2017, Richard Smith, former CEO of Equifax,  released by way of

17 the Energy and Commerce Committee, a written statement stating the Data Breach was a result

18 of "both human error and technology failures."  The following day, October 3, 2017, Smith

[5]Fox-Brewster, Tomas. *A Brief History of Equifax Security Fails*, Forbes.
https://www.forbes.com/sites/thomasbrewster/2017/09/08/equifax-data-breach-history/#6886d22f677c

[6]*Make Identity Theft Protection a Priority in 2014*, EQUIFAX. https://investor.equifax.com/news-and-events/news/2013/12-31-2013

1  testified in front of the House Digital Commerce and Consumer Protection subcommittee. He

2  stated that the cyber attackers were able to penetrate the company's network by exploiting a

3  known vulnerability that Equifax failed to correct. He further stated that an employee knew the

4  vulnerability needed to be corrected and failed to do so.[7]

5      30.    Equifax waited nearly six weeks after the company first detected the massive Data

6  Breach before making a public statement on the breach. The decision to conceal the Data Breach

7  has caused irreparable harm to those whose information was compromised. After the delayed

8  public disclosure of the Data Breach, the firm announced the breach by issuing a press release on

9  September 7, 2017.

10     31.    Equifax failed to adequately help consumers. Equifax set up a website for

11 consumers to check if they were affected by the Data Breach. The website required the input of

12 six digits of consumers' social security numbers, which is enough for a person's number to be

13 ascertained. In some cases, consumers visiting the site on computers were told they were not

14 affected only to receive a different answer when they checked the site on their mobile phones.[8]

15     32.    Following Equifax's tardy notification of the Data Breach to the public, it again

16 failed to meet basic security standards. In the hours immediately after the disclosure of the Data

17 Breach, the main Equifax website was displaying debug codes, another security vulnerability. As

18 of September 15, 2017, Equifax requires consumers to provide their PII to get additional

---

[7]Shaban, Hamza. *Lawmakers grill former Equifax chief executive on breach response* , The Washington Post. https://www.washingtonpost.com/news/the-switch/wp/2017/10/02/what-to-expect-from-equifaxs-back-to-back-hearings-on-capitol-hill-this-week/?utm_term=.d25ed4424851

[8]Equifax Breach Response Turns Dumpster Fire, Krebs On Security. https://krebsonsecurity.com/2017/09/equifax-breach-response-turns-dumpsterfire/

DIEFENBACH, PLLC
55 Broad Street, 27th Floor | New York, NY 10004
(212) 981-2233

CLASS ACTION COMPLAINT

information. The website Equifax created for that purpose runs on a stock installation

WordPress, which does not provide the necessary security required for a site that asks people to

provide their PII. [9]

33. On September 10, 2017 customers were given a PIN number to freeze their files

with Equifax; these PIN numbers could be cracked easily by applying simple algorithms. The

PIN consists of the date and time the freeze was requested, in MMDDYYHHMM format, such

that a freeze requested September 10, 2017 at 2:15 p.m. would result in the PIN 0910171415.[10]

34. Equifax's Data Breach website provides the opportunity to receive a year of free

credit monitoring through TrustedID but initially made no mention of the fact that TrustedID is

owned and operated by Equifax. Equifax has taken advantage of the misfortune of millions of

American consumers and clearly has made an opportunistic attempt to capture market share from

its competitors and to increase its enrollment of customers who would pay for the services in

later years. On information and belief, Equifax stands to profit from the enrollment of victims of

the Data Breach who accepted this offer. By encouraging all consumers to sign up for TrustedID,

Equifax stands to profit significantly from its own inadequate security and the resulting Data

Breach.

35. Between the time period of Equifax discovering the Data Breach and disclosing it

to the public, high-level Equifax executive officers made unscheduled sales of their stock in the

DIEFENBACH, PLLC
55 Broad Street, 27th Floor | New York, NY 10004
(212) 981-2233

[9]*Why The Equifax Breach is Very Possibly The Worst Leak of Personal Info Ever,* Ars Technica. https://arstechnica.com/informationtechnology/2017/09/why-the-equifax-breach-is-very-possibly-the-worst-leak-of-personal-infoever/

[10]Stockley, Mark. *Equifax: woeful PINs put frozen credit files at risk,* Naked Security (Sophos). https://nakedsecurity.sophos.com/2017/09/10/equifaxwoeful-pins-put-frozen-credit-files-at-risk/

1 company for a profit of $2 million.  As a result, the U.S. Justice Department has opened a

2 criminal investigation.[11]

3      36.      On September 8, 2017, New York Attorney General Eric Schneiderman indicated

4 that he would launch an investigation into the Equifax Data Breach.  On September 8, 2017, the

5 House Financial Services Committee announced it would hold hearings on the Data Breach and

6 those hearings are currently ongoing.  On September 14, 2017, the Federal Trade Commission

7 confirmed its investigation into Equifax.

8      37.      Plaintiff and other Americans will incur numerous costs associated with the time

9 spent and productivity loss to address and attempt to mitigate and deal with the consequences of

10 the Data Breach.  As a result of Equifax's actions and omissions, Plaintiff and the members of

11 the Class and Sub-class have been victimized.  They will incur the expense of the consequences

12 of finding fraudulent charges, cancelling and reissuing cards, purchasing credit monitoring and

13 identity theft protection services, imposition of withdrawal and purchase limits on compromised

14 accounts, and the stress, nuisance, and annoyance of dealing with all the issues resulting from the

15 Data Breach.

16      38.      Plaintiff, and the members of the Class and Sub-Class he seeks to represent, will

17 face countless years having to monitor their financial, medical, and employment records.  They

18 will potentially face problems securing housing, employment, credit, educational certifications,

19 licences, and other needs, all due to their personal and credit information being compromised

20 during the Data Breach allowed by Equifax through its actions and inactions.

---

[11]Robinson, Matt. *Equifax Stock Sales Are the Focus of U.S. Criminal Probe*, Bloomberg.
https://www.bloomberg.com/news/articles/2017-09-18/equifax-stock-sales-said-to-be-focus-of-u-s-criminal-probe

CLASS ACTION COMPLAINT

DIEFENBACH, PLLC
55 Broad Street, 27th Floor | New York, NY 10004
(212) 981-2233

**CLASS ACTION ALLEGATIONS**

39.     Plaintiff brings this action, pursuant to Fed. R. Civ. P. 23(a), (b)(1), (b)(2), and (b)(3), on behalf of a class of consumers ("Class"), consisting of all persons residing in the United States whose PII was collected by Equifax and were subjected to the risk of identity theft and credit harm as a result of the Data Breach from May 2017 through July 2017.

40.     Excluded from the Class are Equifax and its affiliates, parents, subsidiaries, current or former employees, officers, directors, and agents at all relevant times.  Also excluded are governmental entities and any judge to whom this case is assigned, their judicial staff, and their immediate families.

41.     Plaintiff also brings this action, pursuant to Fed. R. Civ. P. 23(a), (b)(1), (b)(2), and (b)(3), on behalf of a class of consumers ("Sub-Class"), consisting of all persons who reside in the State of New York whose PII was collected by Equifax and who were subjected to the risk of identity theft and credit harm as a result of the Data Breach from May 2017 through July 2017.

42.     Excluded from the Sub-Class are Equifax and its affiliates, parents, subsidiaries, current or former employees, officers, directors, and agents at all relevant times.  Also excluded are governmental entities and any judge to whom this case is assigned, their judicial staff, and their immediate families.

43.     Plaintiff reserves the right to amend the Class and Sub-Class definitions and to add additional sub-classes as appropriate if discovery and further investigation reveal that the Class and/or Sub-Class should be expanded, otherwise divided into sub-classes, or modified in any way.

44.     Plaintiff satisfies the numerosity, commonality, typicality, and adequacy

11

DIEFENBACH, PLLC
55 Broad Street, 27ᵗʰ Floor | New York, NY 10004
(212) 981-2233

1  prerequisites for suing as a represented party pursuant to Fed. R. Civ. P. 23.

2  45.  **NUMEROSITY.** Joinder of all members of the Class and Sub-Class is

3  impractical because of the approximate 149 million Americans whose PII was affected by the

4  Data Breach. The number of those individuals residing in the State of New York is highly likely

5  to range from several hundred thousand to millions of individuals.

6  46.  **COMMONALITY.** There are questions of law and fact common to the Class and

7  Sub-Class members and these questions predominate over any questions affecting only

8  individual class members, including:

9      a.   whether Equifax violated state and federal law consumer protection

10         statutes;

11      b.   whether Equifax acted negligently in failing to maintain adequate security

12         procedures and practices;

13      b.   whether Equifax had a duty to safeguard the PII of the Plaintiff, the Class,

14         and the Sub-Class, and if so, whether that duty was breached;

15      c.   whether Equifax knew or should have known of the vulnerabilities of the

16         website application prior to the Data Breach;

17      d.   whether the Data Breach was caused in whole or in part by the negligence

18         of Equifax;

19      e.   whether Equifax acted reasonably in delaying disclosure of the Data

20         Breach;

21      f.   whether Equifax's actions and failures to act were the proximate cause of

22         the Data Breach;

DIEFENBACH, PLLC
55 Broad Street, 27th Floor | New York, NY 10004
(212) 981-2233

12

g.     what measures should be required of Equifax to implement in regards to

practices and procedures for safeguarding consumer data against future

cyber attacks;

g.     the appropriate measure of relief;

h.     the extent of the damages caused by Equifax's actions.

47.    **TYPICALITY.** Plaintiff's claims are typical of the claims of the proposed class members, as Plaintiff and the members of the Class and Sub-Class sustained damages arising out of the same wrongful conduct by Equifax and their legal claims arise from the same Equifax practices, as alleged herein.

48.    **ADEQUACY.** Plaintiff will fairly and adequately pursue the interests of the Class and Sub-Class, and protect those interests.  Plaintiff has no interest that are antagonistic to the members of the Class nor the Sub-Class.  Plaintiff has retained counsel who has experience in complex and class action litigation.

49.    Plaintiff and his counsel are committed to vigorously prosecuting this claim on behalf of the Class and the Sub-Class.  Neither the Plaintiff nor his counsel has conflicts with the interests of the Class and Sub-Class.

50.    Plaintiff additionally satisfies the requirements of maintaining a class under Fed. R. Civ. P. 23(b)(1), 23(b)(2), and 23(b)(3).  A class action is superior to all other means available in order to adjudicate this controversy in a fair and efficient manner.  Absent a class action, the members of the Class and the Sub-Class would likely find the cost of litigating their claims prohibitively high and therefore would have no effective remedy at law.  Because of the relatively small size of the individual Class and Sub-Class members' claims, it is likely that few

13

DIEFENBACH, PLLC
55 Broad Street, 27th Floor | New York, NY 10004
(212) 981-2233

DIEFENBACH, PLLC
55 Broad Street, 27ᵗʰ Floor | New York, NY 10004
(212) 981-2233

1 if any Class and Sub-Class members could afford to seek legal redress for Equifax's misconduct

2 as alleged herein. Additionally, prosecution of separate actions by individual members of the

3 classes would create the risk of inconsistent or varying adjudications resulting in the

4 establishment of inconsistent or varying standards for the parties and would not be in the interest

5 of judicial economy.

6    51.    Based on the actions and omissions of Equifax, Plaintiff seeks recovery for the

7 claims alleged, *infra*:

8                          **COUNT ONE: NEGLIGENCE**

9    52.    Plaintiff repeats and realleges paragraphs 1 to 51 as if fully set forth herein.

10   53.    The Count is brought on behalf of the Class.

11   54.    Equifax's negligence was a substantial factor in causing harm to the Plaintiff and

12 Class.

13   55.    Equifax had a duty to protect and safeguard Plaintiff and the Class' PII, to detect

14 promptly any incursions to the systems containing their PII, and to notify affected persons in a

15 reasonable manner.

16   56.    Equifax knew or should have know the risks inherent in their possession of such

17 vast amounts of consumer data. As a result, Equifax was aware or should have been aware of the

18 likelihood of an attempted breach of its customer's PII, and the need to properly secure its data

19 systems.

20   57.    Equifax knew or should have known that its computer systems and data security

21 practices were not adequate to safeguard Plaintiff and Class's PII and to prevent incursions into

22 its data systems. The risk of sophisticated cyber attacks is a continual and increasing risk of the

14

DIEFENBACH, PLLC
55 Broad Street, 27th Floor | New York, NY 10004
(212) 981-2233

1 credit services industry, Equifax's own lax protocols have fallen victim to such risks in prior

2 attacks.

3    58.    Equifax knew or should have known months before the Data Breach that there

4 was a vulnerability in the framework it used to build its web applications and that there were

5 patches available to fix the vulnerability.

6    59.    Equifax owes a legal duty to Americans, including Plaintiff and the Class, to keep

7 their data safe and secure.  This duty includes, among other things, maintaining and testing

8 Equifax's security systems and taking other reasonable security measures to protect and

9 adequately secure the PII of Plaintiff and the Class from unauthorized access and use.

10    60.    Despite its duty, Equifax negligently failed to fix its web application's

11 vulnerability, protect and safeguard Plaintiff and the Class's PII.  It was foreseeable that if

12 Equifax did not take reasonable security measures, the data of Plaintiff and members of the Class

13 would be compromised.  Major corporations, particularly those in the credit services industry,

14 like Equifax, face a higher threat of security breaches than other companies due in part to the

15 large amounts of consumer data it collects.  Equifax should have known to take precautions to

16 secure consumer data, especially in light of recent data breaches and warnings regarding cyber-

17 attacks and network vulnerability in the credit services industry.  As an addition to the the failure

18 to fix its web application's vulnerability, Equifax failed to exercise reasonable care by failing to

19 detect promptly the incursions to the PII it maintained, and subsequently failed to notify affected

20 persons in a timely and reasonable manner.

21    61.    Therefore, as a result of Equifax's negligence, Plaintiff and the Class have been

22 injured, including economically, in an amount to be determined at trial.  Holding Equifax

DIEFENBACH, PLLC
55 Broad Street, 27th Floor | New York, NY 10004
(212) 981-2233

1  accountable for its negligence will further the policies underlying negligence law and will require

2  Equifax to adopt, maintain, and property implement reasonable, adequate, and industry-standard

3  security measures to protect such customer information.

4  ## COUNT TWO: VIOLATION OF THE FCRA

5  ### (15 U.S.C. §§ 1681b, 1681e, and 1681n)

6  62.   Plaintiff repeats and realleges paragraphs 1 to 61 as if fully set forth herein.

7  63.   The Count is brought on behalf of the Class.

8  64.   At all relevant times, Plaintiff and all other Class members have been "consumers"

9  within the meaning of 15 U.S.C. § 1681a(c).

10  65.   At all relevant times, Equifax has been a "consumer reporting agency" within the

11  meaning of 15 U.S.C. § 1681a(f).

12  66.   At all relevant times, the PII of Plaintiff and the other members of the Class

13  within Equifax's custody, and accessed by third parties as a consequence of the Data Breach,

14  constituted a "consumer report" within the meaning of 15 U.S.C. § 1681a(d)(1).

15  67.   Pursuant to the FCRA, Equifax, as a consumer reporting agency, is required to

16  "adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel,

17  and other information in a manner which is fair and equitable to the consumer, with regard to the

18  confidentiality, accuracy, relevancy, and proper utilization of such information in accordance

19  with the requirements" of the FCRA. 15 U.S.C. § 1681(b).

20  68.   Pursuant to the FCRA, Equifax is further required to "maintain reasonable

21  procedures designed to . . . limit the furnishing of consumer reports to the purposes listed under

22  section 1681b of this title." 15 U.S.C. § 1681e(a). Those purposes are limited to only the

DIEFENBACH, PLLC
55 Broad Street, 27th Floor | New York, NY 10004
(212) 981-2233

1  following circumstances: (1) in response to a court order; (2) in accordance with the consumer's

2  written instructions; (3) to a person reasonably believe to intend to use the information in

3  connection with credit issuance, employment, insurance underwriting, license eligibility,

4  investment, legitimate business need, or government-issued travel authorization; (4) in response

5  to a government child support agency request; or (5) in connection with a federal government

6  agency's receivership or liquidation. *See* 15 U.S.C. § 1681b(a)(1)-(6).

7       69.     Equifax did not adopt and maintain reasonable procedures with regard to

8  confidentiality of consumer information or to limiting the furnishing of consumer report

9  information to the enumerated permissible purposes pursuant to the FCRA.

10      70.     Equifax did not take reasonable and appropriate measures to secure, safeguard and

11 protect the PII of Plaintiff and the other members of the Class as required by the FCRA.

12      71.     Equifax's foregoing violations of the FCRA proximately caused the Data Breach,

13 in which the PII of Plaintiff and the other members of the Class was unlawfully accessed by third

14 parties.

15      72.     Because the specific website application vulnerability that enabled the Data

16 Breach was well publicized prior to the Data Breach, and because a fix for that specific

17 vulnerability was available to Equifax prior to the Data Breach, Equifax's foregoing violations of

18 the FCRA were negligent, willful, and reckless.

19      73.     As a consequence of Equifax's negligent, willful, and reckless conduct, unknown

20 third parties were able to gain access to the PII of Plaintiff and the other members of the Class.

21 Therefore, third parties were given the opportunity to misuse that information for purposes

22 impermissible under the FCRA.

DIEFENBACH, PLLC
55 Broad Street, 27th Floor | New York, NY 10004
(212) 981-2233

74.    Plaintiff and the other members of the Class have been damaged by Equifax's

negligent, willful, and reckless violations of the FCRA.

75.    Plaintiff and the other members of the Class are thus entitled to recover "any actual

damages sustained . . . as a result of the failure [to comply with the FCRA] or damages of not

less than $100 and not more than $1,000." 15 U.S.C. § 1681n(a)(1)(A).

76.    Plaintiff and the members of the Class are also entitled to punitive damages, costs

of the action, and reasonable attorneys' fees. 15 U.S.C. § 1681n(a)(2)-(3).

**COUNT THREE: VIOLATION OF THE CREDIT REPAIR ORGANIZATION ACT**

**(15 U.S.C. §§ 1679a *et seq.*)**

77.    Plaintiff repeats and realleges paragraphs 1 to 76 as if fully set forth herein.

78.    The Count is brought on behalf of the Class.

79.    At all relevant times, Equifax has been a "person" within the meaning of 15 U.S.

Code § 1679b.

80.    At all relevant times, Equifax has been a "credit repair organization" within the

meaning of 15 U.S.C. §1679a (3), because, among other things, it uses an instrumentality of

interstate commerce or the mail to sell, provide, or perform (or represent that it will sell,

provide, or perform) services in exchange for money or other valuable consideration for the

express or implied purposes of advising and assisting consumers concerning their credit history,

activity, record, and credit rating.

81.    At all relevant times, TrustedID has been a "credit repair organization" within the

meaning of 15 U.S.C. § 1679a(3), because, among other things, it uses an instrumentality of

interstate commerce or the mail to sell, provide, or perform (or represent that it will sell, provide,

18

DIEFENBACH, PLLC
55 Broad Street, 27th Floor | New York, NY 10004
(212) 981-2233

1  or perform) services in exchange for money or other valuable consideration for the express or

2  implied purposes of advising and assisting consumers concerning their credit history, activity,

3  record, and credit rating.

4      82.    The Credit Repair Organizations Act makes it unlawful to "engage, directly or

5  indirectly, in any act, practice, or course of business that constitutes or results in the commission

6  of, or an attempt to commit, a fraud or deception on any person in connection with the offer or

7  sale of the services of the credit repair organization, or to make or use any untrue or misleading

8  representation of the  services of a credit repair organization." 15 U.S.C. § 1679b(a)(4).

9      83.    During the period of time that Equifax had knowledge of the Data Breach, but was

10  withholding that knowledge from consumers, it engaged in misleading representations in

11  connection with offering services for the purposes of advising and assisting consumers

12  concerning their credit history, activity, record, and credit rating, including without limitation:

13      a.    advertising and selling services that purported to allow consumers to "control"

14          their financial lives;

15      b.    advertising and selling services that purported to help consumers fix inaccurate

16          credit information and "restore" their credit information;

17      c.    advertising and selling services that purported to help consumers get out of debt;

18      d.    advertising and selling services that purported to inform and alert consumers to

19          unusual activity in connection with their personal and financial information;

20      e.    advertising and selling services that purportedly allowed consumers to decide by

21          whom and when their Equifax credit files would be seen; and

22      f.    representing to governmental, corporate, and other entities providing information

19

DIEFENBACH, PLLC
55 Broad Street, 27th Floor | New York, NY 10004
(212) 981-2233

1               to Equifax, including consumers, that Equifax's cyber security was adequate to

2               protect such information.

3      84.     During the period of time that Equifax had knowledge of the Data Breach, but

4  was withholding that knowledge from Americans, Equifax intentionally failed to disclose

5  material facts, which it had a duty to disclose to them, concerning the existence, nature, and

6  circumstances of the Data Breach.

7      85.     During the period of time that Equifax had knowledge of the Data Breach, but

8  was withholding that knowledge from Americans, Plaintiff and other members of the Class paid

9  Equifax or its affiliated or wholly-owned companies for services concerning their credit history,

10  activity, record, and credit rating.

11     86.     Equifax engaged in material misrepresentations or omissions of its services to

12  induce Americans and certain members of the Class to enroll in Equifax's TrustedID credit

13  services, for the purposes of obtaining further sensitive PII from such enrollees to continue to

14  amass their consumer data mine. This was done with the expectation that many such persons

15  would renew their enrollment in TrustedID beyond the one year free period, by:

16      a.     Affirmatively misrepresenting to consumers and the public that the dedicated

17              Equifax breach website would inform individuals whether their information had

18              been compromised in the Data Breach, when in fact the website provided, and

19              provides, no meaningful answers but instead collects and stores users' names and

20              Social Security numbers and puts them on a waitlist to enroll with TrustedID;

21      b.     Omitting material information regarding TrustedID, including that it is a wholly-

22              owned subsidiary of Equifax, and that registering for the service purported to

20

DIEFENBACH, PLLC
55 Broad Street, 27th Floor | New York, NY 10004
(212) 981-2233

1    waive an individual's right to pursue claims against Equifax or TrustedID in a

2    court of law; and

3    c.    Affirmatively misrepresenting whether minors could have been affected by the

4    Data Breach, including by expressly excluding them from coverage under the one-

5    year trial offered through TrusedID and by making false statements on the

6    dedicated breach website to the effect that Equifax does not store information

7    concerning minors.

8    87.    The above conduct was directed towards hundreds of millions of American

9    consumers, was frequent in terms of the nature of such noncompliance, and was intentional and

10    intended to position Equifax to profit from aftermath of the Data Breach.

11    88.    Therefore, as a result of Equifax's conduct alleged herein, pursuant to the Credit

12    Repair Organizations Act, Equifax is strictly liable to Plaintiff and the Class for all monies paid

13    to Equifax by members of the Class under these false pretenses.

14    **COUNT FIVE: VIOLATION OF THE NEW YORK STATE INFORMATION**

15    **SECURITY BREACH AND NOTIFICATION ACT.**

16    **(New York General Business Law §899-aa)**

17    89.    Plaintiff repeats and realleges paragraphs 1 to 88 as if fully set forth herein.

18    90.    The Count is brought on behalf of the Sub-Class.

19    91.    The "Information Security Breach and Notification Act" became effective in the

20    State of New York on December 7, 2005.  The Act has been promulgated through §899-aa of N.

21    Y. Gen. Bus. Law.  The statute requires any business "which conducts business in New York

22    state, and which owns or licenses computerized data which includes private information shall

21

1 disclose any breach of the security of the system following discovery or notification of te breach

2 in the security of the system to any resident of New York state whose private information was, or

3 is reasonably believed to have been, acquired by a person without valid authorization." The

4 disclosure of the breach shall be made to the New York state resident "in the most expedient time

5 possible and without reasonable delay."

6     92.    At all times, Equifax has been a "business" within the meaning of N.Y. Gen. Bus.

7 Law §899-aa(2) because, among other things, is an entity "which owns or licenses

8 computerized data which includes private information."

9     93.    At all relevant times, the Sub-Class's PII has been "personal information" and

10 "private information" within the meaning of N.Y. Gen. Bus. Law § 899-aa because, among other

11 things, it includes any information concerning a natural person which, because of name, number,

12 personal mark, or other identifier, can be used to identify such natural person.  It also includes

13 social security numbers, driver's license numbers or non-driver identification card numbers,

14 account number, credit or debit card number, in combination with any required security code,

15 access code, or password that would permit access to an individual's financial account.

16     94.    At all relevant times, the Data Breach has been a "breach of the security of the

17 system" within the meaning of N.Y. Gen. Bus. Law § 899-aa(1)(c) because, among other things,

18 it was an unauthorized acquisition or acquisition without valid authorization of computerized

19 data that compromises the security, confidentiality, or integrity of personal information

20 maintained by a business.

21     95.    N.Y. Gen. Bus. Law § 899-aa(3) explicitly requires any business "which

22 maintains computerized data which includes private information which such person or business

DIEFENBACH, PLLC
55 Broad Street, 27ᵗʰ Floor | New York, NY 10004
(212) 981-2233

1 does not own shall notify the owner or licensee of the information of any breach of the security of

2 the system immediately following discovery, if the private information was, or is reasonably

3 believed to have been, acquired by a person without valid authorization."

4    96.    Equifax failed to inform its customers of the Data Breach immediately following

5 discovery. Equifax discovered the breach of the security of its data system between mid-May

6 2017 and July 2017 on July 29, 2017. Equifax did not give notice of the Data Breach until

7 September 7, 2017, several weeks after discovery of the approximately ten week compromised of

8 their data systems.

9    97.    Equifax violated N.Y. Gen. Bus. Law § 899-aa because of the firm's failure to

10 directly provide immediate notice of the Data Breach. As such Equifax, pursuant to

11 N.Y. Gen. Bus. Law § 899-aa(6)(b), is liable for "any other lawful remedy available" in which

12 this Court deems appropriate including, but not limited to, any consequential financial losses

13 incurred by the Plaintiff and the Sub-Class as a result of the Data Breach.

14 **COUNT SIX: VIOLATION OF N.Y. FAIR CREDIT REPORTING ACT**

15 **(New York General Business Law § 380)**

16    98.    Plaintiff repeats and realleges paragraphs 1 to 97 as if fully set forth herein.

17    99.    The Count is brought on behalf of the Sub-Class.

18    100.    At all relevant times, Plaintiff and the Sub-Class have been "consumers" within

19 the meaning of N.Y. Gen. Bus. Law § 380-a(b).

20    101.    At all relevant times, Equifax has been a "consumer reporting agency" within the

21 meaning of N.Y. Gen. Bus. Law § 380-a(e).

22    102.    At all relevant times, Equifax has been a "consumer credit reporting agency"

DIEFENBACH, PLLC
55 Broad Street, 27th Floor | New York, NY 10004
(212) 981-2233

23

1  within the meaning of N.Y. Gen. Bus. Law § 380-a(k).

2      103.    At all relevant times, the PII of Plaintiff and the Sub-Class has been a "consumer
3  report" within the meaning of N.Y. Gen. Bus. Law § 380-a(c).

4      104.    N.Y. Gen. Bus. Law § 380-b allows a consumer reporting agency to furnish a
5  consumer report under three circumstance and "no other." These circumstances include "(1) In
6  response to the order of a court having jurisdiction to issue such an order; (2) In accordance with
7  the written instructions of the consumer to whom it relates; or (3) To a person whom it has
8  reason to believe intends to use the information (i) in connection with a credit transaction
9  involving the consumer on whom the information is to be furnished and involving the extension
10  of credit to, or review or collection of an account of, the consumer, or (ii) for employment
11  purposes, or (iii) in connection with the underwriting of insurance involving the consumer, or
12  (iv) in connection with a determination of the consumer's eligibility for a license or other benefit
13  granted by a governmental instrumentality required by law to consider an applicant's financial
14  responsibility or status, or (v) to a person in connection with a business transaction involving the
15  consumer where the user has a legitimate business need for such information, or (vi) in
16  connection with the rental or lease of a residence."

17      105.    Equifax violated N.Y. Gen. Bus. Law § 380-b because the Data Breach does
18  not align with the three circumstances. Through their actions and omissions, Equifax allowed its
19  consumer clients, including Plaintiff and the Sub-Class, to have their PII compromised and
20  subsequently disclosed to unauthorized third parties.

21      106.    Additionally, N.Y. Gen. Bus. Law § 380-k requires that "[e]very consumer or
22  reporting agency shall maintain reasonable procedures designed to avoid violations" of section

DIEFENBACH, PLLC
55 Broad Street, 27ᵗʰ Floor | New York, NY 10004
(212) 981-2233

DIEFENBACH, PLLC
55 Broad Street, 27th Floor | New York, NY 10004
(212) 981-2233

1  380-b.

2  107.  Equifax violated N.Y. Gen. Bus. Law § 380-k by not taking reasonable and

3  appropriate measures to secure, safeguard and protect the PII of Plaintiff and the other members

4  of the Sub-Class from unauthorized disclosure of consumer reports.

5  108.  As such, Plaintif and the members of the Sub-Class incurred damages in an

6  amount deemed appropriate by this Court at trial, and are also entitled to recover of their

7  attorney's fees under N.Y. Gen. Bus. Law § 380-m.

8  **PRAYER FOR RELIEF**

9  WHEREFORE Plaintiff demands judgment against Equifax as follows:

10  a.  Determining that the instant action may be maintained as a class action under

11  Fed. R. Civ. P. 23, and certifying Plaintiff as a Class Representative;

12  b.  Awarding Plaintiff and the other members of the Class and Sub-Class statutory,

13  treble, punitive, or any other form of damages provided and

14  pursuant to the statues cited above;

15  c.  Awarding Plaintiff and the other members of the Class and Sub-Class restitution,

16  disgorgement or other monetary or equitable relief provided by and pursuant to

17  the common law claims and statutes cited above or as the Court deems just and

18  proper;

19  d.  Awarding Plaintiff and the other members of the Class and Sub-Class

20  pre-judgment and post judgment interest;

21  e.  Awarding plaintiff and the other members of the class reasonable attorneys' fees

22  and costs of suit, including expert witness fees; and

25

1     f.     Awarding such other and further relief as this Court may deem just and proper.

2                          **JURY DEMAND**

4              Plaintiff demands trial by jury.

7     Dated: October 20, 2017              Respectfully submitted,

9                          **DIEFENBACH, PLLC**

Gordon Price Diefenbach
Attorney(s) for Plaintiff
55 Broad Street, 27TH Floor
New York, NY 10004
Tel: (212) 981-2233
Fax: (646) 867-1150
Email: gordon@diefenbachlaw.com

**LAW OFFICES OF
STEVEN E. ARMSTRONG, PLLC**

Steven E. Armstrong
Attorney(s) for Plaintiff
26 Broadway, 17th Floor
New York, NY 10004
Tel: (646) 708-3658
Fax: (212) 344-7285
Email: sarmstrong@armstrongpllc.com

DIEFENBACH, PLLC
55 Broad Street, 27th Floor | New York, NY 10004
(212) 981-2233